### JOHN H. PLATT, assignee,

*v.*

### AARON S. BRIGHT and wife.

1. Under a provision in a railroad charter requiring notice in condemnation proceedings to be given to "the persons interested," a mortgagee of the lands condemned, if not notified, is not bound by the proceedings in condemnation.

2. Where an award of damages in condemnation of lands was paid into court upon the application of a mortgagee of such lands,— *Held,* that it might, on proper amendment of the proceedings, be equitably distributed by the court so as to protect such mortgagee and the railroad company also, although such award was made prior to the passage of the act of 1877 (*P. L.* 1877, p. 137) expressly authorizing the distribution of funds in such cases.

***

Bill to foreclose. On exception to master's report.

*Mr. F. Fellows,* of New York, for the exceptant.

*Mr. R. Allen, Jr.,* and *Mr. T. N. McCarter, contra.*

Platt *v.* Bright.

THE CHANCELLOR.

The question presented for decision is, whether certain money awarded to the mortgagors by proceedings in condemnation, taken by the New Egypt and Farmingdale Railroad Company, under their charter, in reference to part of the mortgaged premises, and which was paid into this court upon a petition of the complainant, should be paid over to him, towards satisfaction of the amount due on the mortgage. Under the proceedings in condemnation no notice was given to the mortgagee. The charter of the company (*P. L.* 1869, pp. 472, 476, 477,) provides that in condemnation of land or materials for the railroad, notice shall be given to "the persons interested" in the property which it is intended to take. Under the circumstances, the mortgagee not having been a party to the proceedings, and having had no notice thereof, is not bound by them. *State, National Railw. Co.,* v. *Easton & Amboy R. R. Co.,* 7 *Vr.* 182. The only persons notified were the mortgagors, Mr. and Mrs. Bright, and the award was made to them. The bill was filed on the 17th of December, 1872, and the proceedings in condemnation were begun on the 3d of February, 1873, and the report of the commissioners was made on the 17th of March following. The railroad company has not been made a party to this suit. The complainant, by the petition before referred to, alleged that the company was about to pay the amount awarded for value of land and damages, to the mortgagors; that the mortgaged premises were a scanty security, and that the company intended, in adapting the land taken by them to their purposes, to make a deep cut therein, which would greatly damage it.

On the filing of the petition, an order was made requiring the company to pay the money into this court, which was done accordingly. Subsequently, the mortgagors applied, by petition, for part of the money which was thus paid in, basing their application on the ground that the money thus applied for was not awarded in respect to any part of the

9

mortgaged premises, but in respect of other adjoining land. The petition and the affidavit annexed show that the rest of the land taken was covered by the mortgage. An order was made on the petition directing the payment to the mortgagors of the part of the money which was awarded in respect to such other land for value and damages. The master, under the order of reference, recommends that the mortgaged premises be sold, subject to the right of the railroad company under the condemnation, and he reports, substantially, that the sum of $6,610 is the value of the part of the mortgaged premises taken by the company and damages for taking it. The defendants except to the report in respect to those matters.

The master, in his report, has conformed to the order of reference, and his conclusions are fully sustained by the evidence. The exceptions must, therefore, be overruled, with costs.

The order of reference was made on the hearing of the cause before the vice-chancellor, on the 28th of June last. If there is error in it, it obviously cannot be corrected by means of exceptions to the master's report. The question now raised by the exceptions was not raised on the hearing, nor at any previous time in the cause. On the other hand, there appears, from the fact that no objection was ever made to the order requiring the payment of money into court, so far as the money awarded in respect to the mortgaged premises is concerned, to have been an acquiescence on the part of the defendants in the propriety of that order. Nor do I see any insuperable difficulty in the way of doing justice to all the parties in this suit in respect to that money. It is now in court. It has never been paid over to Mrs. Bright. Were it in the hands of the railroad company, that company would, under the act of 1877, "respecting the awards of commissioners in cases of lands and real estate taken or condemned by law, and appeals therefrom," (*P. L.* 1877, p. 137,) be entitled to protection as against the mortgage, and that, too, notwithstanding the fact that the award

was made prior to the passage of that act.  By that act power is expressly given to this court to distribute the money according to law.  It provides, that whenever it shall appear to the chancellor that the lands taken pursuant to any law or act aforesaid (act of incorporation or law of this state), are encumbered by any mortgage, judgment or other lien of any kind, the money awarded to the owner or owners of said lands may, by the order of the chancellor, be paid into the court of chancery, and shall there be distributed according to law, and written notice given to such owner or owners that such money has been so paid into court, shall have the same effect as if the money so awarded had been actually tendered to the owner or owners.  The award was of the sum of $9,531 for the land and damages, not merely for the interest of the mortgagors therein.  It appears by the petition of Mrs. Bright, that of that sum $6,610 were awarded for the value of the mortgaged premises and damages thereto.  There is no reason in equity why that money should be paid to Mrs. Bright before the mortgage shall have been paid.  Nor is there any reason in equity why the railroad company, which has paid the condemnation money, should be compelled to contribute to the payment of the mortgage, inasmuch as the mortgagee is satisfied with the amount of the award.

It is very obvious that, unless the right of the railroad company is to be protected in selling the mortgaged premises, the proceedings should be stayed until the company can be brought in as a party to this suit.  It did not, by the condemnation, assume the payment of any encumbrance on the property, and it has the same equitable right that a purchaser of the equity of redemption in part of the mortgaged premises would have.  It has the right to have the rest of the mortgaged premises remaining in the hands of Mrs. Bright sold for the payment of the mortgage, before recourse is had to the part acquired through the proceedings for condemnation.  And, although it has taken the property *pendente lite,* its rights, which have been brought

to the knowledge of the court by the complainant's petition, and that of Mrs. Bright, in the cause, should not be ignored or disregarded. And in view of the fact that the condemnation money is in court in this cause, it will be permitted to seek in this suit any relief in respect to the application of that money to which, under the act of 1877 or otherwise, it may be advised that it is entitled, if it be necessary for the furtherance of justice so to do, and the complainant, in order to adapt the proceedings to the relief sought in reference to the payment of the money in court over to him on account of his mortgage, will be permitted, if he desire to do so, to file a supplemental bill.